# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TEXAS

## MARSHALL DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO. LTD.,<br><br>      Plaintiff,<br><br>vs.<br><br>T-MOBILE US, INC. and  T-MOBILE USA, INC.,<br><br>      Defendants. | CIVIL ACTION NO. 2:16-cv-00056-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANTS T-MOBILE US, INC. AND <u>T-MOBILE USA, INC.'S MOTION TO DISMISS</u>

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     ISSUE TO BE DECIDED ......................................................................................2

III.    FACTUAL BACKGROUND ..................................................................................2

        A.      Parties...........................................................................................................2

        B.      Western District of Washington Litigation..............................................3

        C.      Huawei's Complaint ...................................................................................4

                1.      The Asserted Patents..........................................................................4

                2.      Huawei's Allegations.........................................................................5

IV.     ARGUMENT ..........................................................................................................7

        A.      Huawei's Direct Infringement Allegations Should Be Dismissed For
                Failure To Satisfy The Pleading Standards Of *Twombly* And *Iqbal.* ..................9

                1.      Huawei Fails To Provide Notice Of What Infringes. ..............................9

                2.      Huawei Fails To Provide Notice Of How T-Mobile Infringes. ..............13

        B.      Huawei's Induced Infringement Claims Should Be Dismissed For Failure
                To Plead Essential Elements.................................................................................16

        C.      Huawei's Contributory Infringement Claims Should Be Dismissed For
                Failure To Plead Essential Elements....................................................................19

        D.      Huawei Fails To State A Valid Claim For Willful Infringement. .......................22

V.      CONCLUSION.....................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Achates Reference Pub., Inc. v. Symantec Corp.*,
   No. 2:11-cv-294-JRG-RSP, 2013 WL 693955 (E.D. Tex. Jan. 10, 2013) ............................23

*Adiscov, LLC v. Autonomy Corp.*,
   762 F. Supp. 2d 826 (E.D. Va. 2011) ...................................................................................10

*Affinity Labs of Texas v. Toyota Motor N. Am.*,
   No. W:13-cv-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) .........................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................... *passim*

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................... *passim*

*Bender v. LG Electronics U.S.A., Inc.*,
   No. C 09–02114, 2010 WL 889541 (N.D. Cal. Mar. 11, 2010) ........................................10, 11

*Commil USA, LLC v. Cisco Sys. Inc.*,
   135 S. Ct. 1920 (2015)................................................................................16, 18, 19

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006)............................................................................18

*Eidos Commc'ns., LLC v. Skype Techs. SA*,
   686 F. Supp. 2d 465 (D. Del. 2010)........................................................................10

*Global-Tech Appliances, Inc. v. SEB S. A.*,
   131 S. Ct. 2060 (2011)........................................................................................18

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
   681 F.3d 1323 (Fed. Cir. 2012)................................................................16, 19, 21

*In re Seagate Tech., LLC*,
   497 F.3d 1360 (Fed. Cir. 2007)........................................................................22, 24

*InMotion Imagery Techs. v. Brain Damage Films*,
   No. 2:11-cv-414-JRG, 2012 WL 3283371 (E.D. Tex. Aug. 10, 2012) ...................................24

*Landmark Tech. LLC v. Aeropostale*,
   No. 6:09-cv-262, 2010 WL 5174954 (E.D. Tex. Mar. 29, 2010) ............................................9

*Oakley, Inc. v. 5.11, Inc.*,
  No. 11CV2173, 2012 WL 1327796 (S.D. Cal. Apr. 17, 2012) ...............................................10

*PageMelding, Inc. v. ESPN, Inc.*,
  No. C 11-06263 WHA, 2012 WL 1534844 (N.D. Cal. Apr. 30, 2012)...........................14, 15

*Raindance Techs. v. 10X Genomics, Inc.*,
  No. 15-152-RGA, 2016 WL927143 (D. Del. Mar. 4, 2016) ...............................................8, 13

*Realtime Data, LLC v. Stanley*,
  721 F. Supp. 2d 538 (E.D. Tex. 2010) ...............................................................................8, 10

*ReefEdge Networks, LLC v. Juniper Networks, Inc.*,
  No. 13-cv-412, 2014 WL 1217263 (D. Del. Mar. 21, 2014) ...................................................24

*Rembrandt Patent Innovations LLC v. Apple Inc.*,
  No. C 14-05094 WHA, 2015 WL 8607390 (N.D. Cal. Dec. 13, 2015) .....................................8

*Round Rock Research, LLC v. Oracle Corp.*,
  No. 4:11-cv-332, 2011 WL 11761563 (E.D. Tex. Oct. 25, 2011) ...........................................12

*Superior Indus., LLC. v. Thor Global Enters. Ltd.*,
  700 F.3d 1287 (Fed. Cir. 2012)................................................................................................19

*T-Mobile USA, Inc. v. Huawei Device USA Inc.*,
  No. 2:14-cv-01351-RAJ (W.D. Wash.) .....................................................................................3

*Touchscreen Gestures LLC v. Research in Motion Ltd.*,
  No. 6:12-cv-263, 2013 WL 8505349 (E.D. Tex. Mar. 27, 2013) ...........................................24

*U.S. Ethernet Innovs., LLC v. Cirrus Logic, Inc.*,
  No. 6:12-cv-366, 2013 WL 8482270 (E.D. Tex. Mar. 6, 2013) ...........................16, 21, 22, 23

*Universal City Studios v. Nissim Corp.*,
  Nos. 14-81344, 14-81349, 14-81350 .......................................................................................19

*Van De Vliert v. TAM Int'l, Inc.*,
  No. 6:15-cv-135-JRG, 2015 WL 6745811 (E.D. Tex. Oct. 30, 2015) (Gilstrap,
  J.)................................................................................................................................................8

*Via Vadis, LLC v. Skype, Inc.*,
  No. 11-507, 2012 WL 261367 .................................................................................................13

**Statutes**

35 U.S.C. § 271 ................................................................................................................................5

35 U.S.C. § 271(c) .........................................................................................................................19

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ..................................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 1

Fed. R. Civ. P. 84 ............................................................................................................ 8

## I.       INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants T-Mobile US, Inc. and T-Mobile USA, Inc. (collectively, "T-Mobile") move to dismiss plaintiff Huawei Technologies Co. Ltd.'s ("Huawei") complaint for failure to state a valid claim.  As the Supreme Court emphasized in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must provide fair notice of the plaintiff's claim, and the grounds on which it rests. But Huawei's complaint ignores this basic rule of pleading.  Instead, it is filled with paragraph after paragraph describing Huawei's purported contributions to the wireless communications industry, but virtually no substance explaining how T-Mobile's products or services purportedly infringe any of the asserted claims.  Huawei's vague allegations of infringement fail to provide T-Mobile with notice of what within T-Mobile's networks Huawei accuses of infringing and why, and so falls short of the pleading standards set forth in *Iqbal* and *Twombly*.

*First*, Huawei's complaint broadly accuses every T-Mobile wireless network "and/or all the components thereof" of infringing the claims.  In other words, for purposes of identifying direct infringement, the complaint draws a box around T-Mobile's "wireless networks" and "services" as a whole, leaving as a mystery what particular architecture or components allegedly infringe, and how they correspond to the asserted claims of the patents-in-suit.  This would be problematic in any case, but is particularly so here given the scale of T-Mobile's networks, the range of components and technologies contained within those networks, and Huawei's failure to explain how anything in that extraordinarily large box allegedly infringes any of the asserted claims.  T-Mobile's cellular networks cover more than 90% of the U.S. population; are composed of a vast array of infrastructure equipment including more than 55,000 separate cell sites, 60 switching centers, 8 data centers, and millions of miles of cable; and implement myriad technologies.  Moreover, this infrastructure equipment is generally manufactured and supplied by third parties.  The complaint's generic reference to "wireless networks" accordingly fails to provide even the most basic information required for T-Mobile to assess the claims against it.

*Second*, Huawei's indirect infringement claims are equally sparse.  They fail not only to identify the allegedly infringing instrumentalities, but also to allege any facts to support additional required elements of proof including (1) knowledge of infringement, (2) specific intent to induce infringement, (3) the identity of the components within T-Mobile's networks that allegedly contribute to infringement, and (4) lack of substantial non-infringing uses of the service plans, mobile devices, and SIM cards identified as contributing to infringement.  Even for those elements that are alleged, Huawei fails to plead plausible facts to support its allegations.

*Finally*, Huawei's willfulness claim is nothing more than a barebones, fact-free recitation of the elements of willfulness that fails as a matter of law.

T-Mobile respectfully requests that the Court dismiss the complaint.

## II.   ISSUE TO BE DECIDED

Whether the direct, indirect, and willful patent infringement claims in Counts I-III of the complaint fail to state a claim upon which relief may be granted.

## III.   FACTUAL BACKGROUND

### A.   Parties

T-Mobile is a large wireless network operator based in Bellevue, Washington.  T-Mobile's networks provide wireless voice, messaging, and data services capable of reaching nearly the entire U.S. population.  T-Mobile's networks support a number of 2G, 3G, and 4G technologies.  T-Mobile acquires its network infrastructure equipment from multiple network component suppliers.

Huawei is a Chinese company located in Shenzhen, China.  Compl. ¶ 34.  Huawei manufacturers and supplies telecommunications network equipment to telecommunications carriers, among other things.  *Id*. ¶ 2.  According to a January 2016 Huawei press release, Huawei has a patent cross-license with Ericsson, a supplier of networking equipment to T-Mobile.

### B.       Western District of Washington Litigation

T-Mobile and Huawei have been engaged in litigation in the U.S. District Court for the Western District of Washington since 2014.  In May 2013, T-Mobile discovered that Huawei employees had improperly accessed T-Mobile's robot testing laboratory and stolen trade secrets relating to T-Mobile's proprietary robot testing system as well as a critical part of the robot arm. Complaint ¶¶ 43, 45-49, 54-57 ECF No. 1, *T-Mobile USA, Inc. v. Huawei Device USA Inc.*, No. 2:14-cv-01351-RAJ (W.D. Wash.).  T-Mobile also discovered that these Huawei employees communicated the stolen trade secret information to other Huawei employees in China, and that Huawei had instructed its engineers to steal T-Mobile's trade secrets and robot part to gather information to use with Huawei's own testing robot.  *Id.* ¶¶ 50, 56-60.  After several communications and in-person meetings in which it became clear that Huawei was unwilling to address its theft of T-Mobile's trade secrets, T-Mobile terminated its business relationship with Huawei to prevent future security breaches by Huawei.  In September 2014, T-Mobile filed a trade secret lawsuit against Huawei and Huawei's U.S. subsidiary, which is currently pending in the Western District of Washington.  That case is scheduled to be tried in October 2016.  Minute Order, ECF No. 106, *T-Mobile USA, Inc. v. Huawei Device USA Inc.*, No. 2:14-cv-01351-RAJ (W.D. Wash.).

Once it became clear that T-Mobile would not simply allow Huawei to misuse the stolen robot and related technology, and that the dispute between the companies would likely result in T-Mobile filing a lawsuit, Huawei sent a letter to T-Mobile on June 6, 2014 claiming that T-Mobile required a license to Huawei's portfolio of self-declared standard essential patents.  In response, T-Mobile explained to Huawei, among other things, that Huawei had not "identified any T-Mobile equipment or instrumentalities that . . . require a license or how the equipment or instrumentalities practice the claims of any of Huawei's patents."  Huawei insisted on a Non-Disclosure Agreement ("NDA") before it would provide the requested information.  But there was no need for an NDA for Huawei to provide information about T-Mobile's networks to T-

- 3 -

Mobile.  Huawei never provided the requested information, and instead waited for more than a year and then sued T-Mobile alleging patent infringement.

### C.   Huawei's Complaint

Huawei filed this complaint and three others against T-Mobile on January 15, 2016.  *See Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, Case Nos. 2:16-cv-00052-JRG-RSP, 2:16-cv-00055-JRG-RSP, 2:16-cv-00056-JRG-RSP, 2:16-cv-00057-JRG-RSP (E.D. Tex. Jan. 15, 2016).

### 1.   The Asserted Patents

In this action, Huawei asserts that T-Mobile infringes three patents:  U.S. Patent No. 8,537,779 ("'779 patent"), entitled "Method, System, and Apparatus for Registration Processing"; U.S. Patent No. 8,031,677 ("'677 patent"), entitled "Method, System, and Device For User Detachment When a Handover or Change Occurs In Heterogeneous Network"; and U.S. Patent No. 8,638,750 ("'750 patent"), entitled "Method and Network Device for Creating And Deleting Resources."

The Abstract of the '779 patent states that it is directed to a "registration processing method, a handover processing method, a system, and an apparatus . . . to enable the network to distinguish between different registration processing types."  '779 patent at Abstract.  The Abstract also states that the method includes:

- "receiving information about a processing type of registering a UE into a network, where the information is reported by the UE in the process of the registration; and

- "identifying the processing type of the registration according to the information about the processing type."

*Id.*  The Abstract states that the system includes:

- "a UE, adapted to report information about the processing type of registering the UE into a network in the process of the registration; and

- "a network, adapted to identify the processing type of the registration according to the received registration processing type information reported by the UE."

*Id.*

- 4 -

The Abstract of the '677 patent states that it is directed to a method "for user detachment when a handover or change occurs in a heterogeneous network." '677 patent at Abstract. According to the Abstract, the method includes:

- "a user equipment (UE) is handed over or switched from a source network to a target network;

- "a network element on a network side determines whether to detach the UE from the source network, and

- "if yes, the network element on the network side detaches the UE from the source network."

*Id.*  The Abstract states that the patent also provides "[a] system and a device for user detachment when a handover or change occurs in a heterogeneous network, and another method for user detachment when a handover or change occurs in a heterogeneous network."  *Id.*

The Abstract of the '750 patent states that it is directed to "a method for creating resources, a method for deleting resources, and a network device." '750 patent at Abstract. According to the Abstract, the "method for creating resources" includes:

- "notifying, by a first network element, a second network element at network side of a process type for creating resources for a UE; and

- "performing, by the second network element, a process for creating resources for the UE according to the process type."

*Id.* at Abstract.

### 2.    Huawei's Allegations

***Direct infringement allegations:*** Huawei's complaint includes three counts asserting patent infringement, each containing nearly identical allegations.  Huawei begins each count with "kitchen sink" allegations, listing all possible infringement theories permissible under 35 U.S.C. § 271, and broadly accusing unspecified "systems, products, and/or services" including without limitation "T-Mobile's Infringing Wireless Networks and/or the components thereof":

> T-Mobile has ***infringed, contributed to the infringement of, and/or induced*** others to infringe ***at least*** claims 1, 4-5, 9-10 ***and/or*** 11 of the '779 patent by, ***among other things, making, using, offering for sale, selling, and/or importing*** into the United States unlicensed ***systems, products, and/or services*** that infringes such claims of the '779 patent.  Such unlicensed systems, products, and/or services include, ***by way of example and without limitation***, T-Mobile's

> *Infringing Wireless Networks and/or the components* thereof which allow for
> seamless handover between Wi-Fi networks and its Infringing Wireless Networks.
> In addition, *on information and belief*, users of T-Mobile's Infringing Wireless
> Networks infringe at least claims 1, 4-5, 9-10, and/or 11 of the '779 patent by
> putting the claimed system into service by, *for example*, using the seamless
> handover capabilities of those Infringing Wireless Networks.

Compl. ¶ 44 (emphasis added); *see also id.* ¶¶ 56, 68.  The "Infringing Wireless Networks" that

Huawei identifies as an "example" are defined earlier in the complaint as "T-Mobile's 2G, 3G,

and 4G LTE wireless networks," *id.* ¶ 17, so broad a definition that it could cover *all* of T-

Mobile's cellular networks in the U.S.  The reference to "and/or the components thereof which

allow for seamless handover between Wi-Fi networks and its Infringing Wireless Networks"

does not provide any more detail:  the components are not identified, and "seamless handover" is

only a general description of a broad and wide ranging network function that includes a

multitude of individual components and technologies.  With the exception of the patent number

and patent claims listed, this paragraph reads verbatim for all three patent counts.  *Id.* ¶¶ 44, 56,

68.

    This language is followed by a single, broad allegation that T-Mobile directly infringes

the patent by "i) making, leasing, *and/or* using its wireless networks; ii) making, offering for

sale, *and/or* selling its services; **and** iii) making, using, offering for sale, selling, *and/or*

importing into the United States components (*such as* MMEs, PGWs, SGSNs *etc.*) in a manner

that infringes . . ." and by using "such components" in its networks.  *Id.* ¶¶ 45, 69 (emphasis

added); *see also id* ¶ 57 (listing components "*such as* MMEs, PGWs, SGWs, *etc.*") (emphasis

added), 21 (similar general allegation).  Again, with the exception of the patent numbers and

asserted claims, these allegations are identical in each patent infringement count.

    *Indirect and willful infringement allegations:*  Huawei follows these broad, vague direct

infringement allegations by equally broad, vague indirect infringement allegations.  The

complaint includes three paragraphs for each patent section directed to inducement and one

directed to contributory infringement.  Each of these paragraphs begins with "on information and

belief" and repeats much of the same language in the other paragraphs.  When the repetitive

language is distilled, these paragraphs merely allege that T-Mobile provides "service plans, mobile devices, and/or SIM cards" that allow customers and unidentified "others" to "access" the Infringing Wireless Networks and induces others "to use and/or how to use the seamless handover capabilities of the Infringing Wireless Networks," which T-Mobile "knows or should know" contributes to or induces others to directly infringe the patent.  Compl. ¶¶ 46-49, 58-61, 70-73; *see also id*. ¶¶ 22-27 (similar paragraphs in the general allegations).  Each patent section includes an allegation that "[b]y way of at least this Complaint," T-Mobile knows of the patent and "performs acts that it knows, or should know, induce, and/or contribute to" direct infringement.  *Id*. ¶¶ 50, 62, 74.  The last allegation in each count purportedly asserts a willfulness, but merely parrots the elements of that claim.  *Id*. ¶¶ 51, 63, 75.  The complaint does not allege that Huawei provided T-Mobile with any information before commencing suit regarding the basis for any charge of infringement.

Finally, Huawei's complaint contains only one sentence that could remotely be considered to identify specific conduct by T-Mobile:  that T-Mobile "promotes Wi-Fi Calling and further promotes seamless Wi-Fi calling handover with its Infringing Wireless Networks" by "specifically advertis[ing] 'seamless handover between our LTE network and any available Wi-Fi connection so calls don't drop between the two.'"  *Id*. ¶¶ 20, 43, 55, 67.  Huawei never explains how advertising a feature that occurs automatically could possibly induce anyone to infringe any claim of the patents-in-suit, much less how it shows in the slightest any intent by T-Mobile to contribute to or induce their infringement.

## IV.    ARGUMENT

To state a valid claim, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  As the Supreme Court has emphasized, a plaintiff must "provide the grounds of his entitle[ment] to relief," and must allege specific facts in support of each such claim, sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 555, 570 (citations and internal quotation marks omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Rather, the complaint must contain "further factual enhancement" sufficient to move the claim from "sheer possibility that a defendant has acted unlawfully" to "facial plausibility"—i.e., "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  Without such facts, a complaint cannot satisfy the requirement of "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also id.* at 557 (finding that a "naked assertion" of wrongdoing without "further factual enhancement" does not state a claim).

The Supreme Court recently abrogated the Appendix of Forms, including Form 18, confirming that patent plaintiffs can no longer seek to avoid the *Iqbal* and *Twombly* standards by relying on the highly generalized form infringement complaint previously included in Form 18. *See* Fed. R. Civ. P. App'x of Forms (noting that forms, including Form 18, were abrogated effective Dec. 1, 2015); *Raindance Techs. v. 10X Genomics, Inc.*, No. 15-152-RGA, 2016 WL927143, at *2 (D. Del. Mar. 4, 2016) (noting that Form 18 has been abrogated and applying the *Twombly* and *Iqbal* standards); *Rembrandt Patent Innovations LLC v. Apple Inc.*, No. C 14-05094 WHA, 2015 WL 8607390, at *2 (N.D. Cal. Dec. 13, 2015) (finding that *Twombly* sets forth the controlling pleading standard after the abrogation of Rule 84, which included Form 18). Accordingly, the pleading standards set forth in *Twombly* and *Iqbal* now apply to direct, indirect, and willful infringement claims.  And as this Court and others have confirmed, even Form 18 required dismissal where the identification of accused products is too vague to determine what is being accused.  *See Van De Vliert v. TAM Int'l, Inc.*, No. 6:15-cv-135-JRG, 2015 WL 6745811, at *2 (E.D. Tex. Oct. 30, 2015) (Gilstrap, J.) (dismissing complaint because the Court "was unable to determine" whether the identified "Swellable Packer" comprised "the entire claimed system or is simply a component of the allegedly infringing system); *Realtime Data, LLC v. Stanley*, 721 F. Supp. 2d 538, 543 (E.D. Tex. 2010) (granting motion to dismiss because the

complaint's "vague reference" to "data compression products and/or services" as accused products "fail[ed] to adhere to Form 18 in that they do not specifically identify any accused products or services"); *Landmark Tech. LLC v. Aeropostale*, No. 6:09-cv-262, 2010 WL 5174954, at *3 (E.D. Tex. Mar. 29, 2010) (dismissing complaint that contained only an "extremely vague" identification of "electronic commerce systems" as the accused products).

Huawei's complaint does not come close to satisfying these standards.  Huawei's allegations regarding the accused products and services, though lengthy, are so devoid of specificity that they fail to provide fair notice to T-Mobile of Huawei's patent infringement claims and their grounds.  More words do not necessarily mean more substance.  Indeed, as described in detail below, Huawei's direct infringement allegations fail to identify the specific products or services accused of direct infringement, fail to identify which acts by T-Mobile constitute infringement under § 271(a), and fail to explain how T-Mobile infringes—in fact, Huawei never even mentions any elements of any of the asserted claim.  These allegations do not state a plausible claim for relief.

Huawei's indirect infringement and willfulness claims fare no better:  the inducement and contributory infringement claims fail to allege facts to support all required elements of proof, and the willfulness claims are nothing more than a fact-free recitation of the elements of the cause of action.  Compounding these deficiencies, Huawei's complaint is replete with open-ended hedging language such as "on information and belief," "and/or," "at least," "one or more," "by way of example and without limitation," and "including but not limited to."  And notwithstanding that the asserted patents are directed to different subject matter, Huawei relies on essentially identical allegations for every patent infringement claim.

### A.    Huawei's Direct Infringement Allegations Should Be Dismissed For Failure To Satisfy The Pleading Standards Of *Twombly* And *Iqbal.*

#### 1.    Huawei Fails To Provide Notice Of <u>What</u> Infringes.

Huawei's allegations variously refer to (1) the entirety of T-Mobile's "wireless networks," (2) "components" within T-Mobile's "wireless networks," or (3) certain network

components in combination with all of T-Mobile's "wireless networks," as the directly infringing instrumentalities.  None of the allegations suffices to provide notice of what is actually targeted.

*First*, Huawei vaguely refers to T-Mobile's "Infringing Wireless Networks"—which it defines as "T-Mobile's 2G, 3G, and 4G LTE wireless networks," Compl. ¶ 17—"and/or the components thereof."  *See id*. ¶¶ 44, 56, 68.  These allegations effectively accuse all of T-Mobile's operating wireless networks in their entirety.  Courts have consistently rejected such vague and generic descriptions of accused products as failing to provide fair notice under *Twombly* and *Iqbal*.  For example, the court in *Realtime Data, LLC* found a "vague reference" to "data compression products and/or services" accused of infringing four patents insufficient because it "fail[e]d to inform Defendants as to what they must defend."  *Realtime Data, LLC*, 721 F. Supp. 2d at 543 (granting motion to dismiss); *see also Oakley, Inc. v. 5.11, Inc.*, No. 11CV2173, 2012 WL 1327796, at *3 (S.D. Cal. Apr. 17, 2012) (granting motion to dismiss, finding "broad claims of infringing 'eyewear' are not pled with the specificity necessary to provide fair notice of its claims against Defendants"); *Eidos Commc'ns., LLC v. Skype Techs. SA*, 686 F. Supp. 2d 465, 467 (D. Del. 2010) (granting motion to dismiss because allegations that defendants' "communication system products and/or methodologies" infringed plaintiffs' patents were insufficient because "Plaintiffs were obligated to specify, at a minimum, a general class of products or a general identification of the alleged infringing methods"); *Bender v. LG Electronics U.S.A., Inc.*, No. C 09–02114, 2010 WL 889541, at *2, 6 (N.D. Cal. Mar. 11, 2010) (granting motion to dismiss where complaint asserted that defendants' products that contained a certain high-speed analog circuit known as a "buffered transconductance amplifier" and listed numerous categories of products, such as cell phones, computers, television sets, MRI machines, and other categories "where high performance, high speed analog circuits are used, and/or components thereof"); *Adiscov, LLC v. Autonomy Corp.*, 762 F. Supp. 2d 826, 831-32 (E.D. Va. 2011) (dismissing complaint that accused "legal discovery software and services" without identifying any particular product or service or how it infringed).

**Second**, Huawei also includes vague references to unidentified components of these operating networks that purportedly perform a single generic function:  "seamless handover between Wi-Fi networks and [T-Mobile's] Infringing Wireless Networks."  Compl. ¶¶ 44, 56, 68.   These allegations are similarly insufficient to provide fair notice to T-Mobile.  At best, they provide no more than an overly-generalized description of the subject matter of the patents-in-suit, without any particular linkage to T-Mobile's systems and services or even any limitation of any asserted claim.[1]  Moreover, this function can be implemented in different ways using different types of components, and Huawei fails to identify which component or parts of a component in T-Mobile's networks implement the function.  Huawei's allegations thus amount to little more than an assertion that T-Mobile's network components that enable a generalized function infringe the patents.  Such conclusory allegations are the same type of "unadorned, the-defendant-unlawfully-harmed-me accusation" rejected in *Iqbal*, and should likewise be rejected here.  *See Iqbal*, 556 U.S. at 678, 687; *see also Bender*, 2010 WL 889541, at *2, 6 (granting motion to dismiss where complaint listed numerous categories of products, such as cell phones, computers, television sets, MRI machines, and others "where high performance, high speed analog circuits are used, and/or components thereof").

**Third**, Huawei identifies some generic network components in each patent infringement count.  For example, for the '779 patent, Huawei alleges:

> For example, T-Mobile has directly infringed at least claims 1, 4-5, 9-10, and/or 11 of the '779 patent by i) making, leasing, and/or using its wireless networks; ii) making, offering for sale, and/or selling its services; and iii) making, using, offering for sale, selling, and/or importing into the United States components (***such as MMEs, PGWs, SGSNs etc.***) in a manner that infringes at least claims 1, 4-5, 9-10, and/or 11 of the '779 patent and by using such components in its networks.

---

[1] The patents-in-suit are all directed to specific details of the handover process between a 3GPP network and a non-3GPP network.  The '779 patent is entitled "Method, System, and Apparatus for Registration Processing"; the '677 patent is entitled "Method, System, and Device For User Detachment When a Handover or Change Occurs In Heterogeneous Network"; and the '750 patent is entitled "Method and Network Device for Creating And Deleting Resources."

Compl. ¶¶ 45, 69 (emphasis added); *see also id.* ¶ 57 (listing components "**such as** MMEs, PGWs, SGWs, **etc.**") (emphasis added).  But these allegations do nothing to correct its failure to meaningfully identify the accused instrumentalities.  As an initial matter, the technologies that Huawei describes as "components" actually represent high-level, generic network functions.  As Huawei's own patents confirm, these functional entities encompass a multitude of components that perform numerous functions.  Accordingly, merely naming high-level functional entities like "SGSNs" does not tell T-Mobile what is being accused of infringement.[2]  Compounding the problem, the complaint leaves unclear whether these "components" alone are alleged to infringe, or whether they allegedly infringe when combined with other unspecified components, or something else.  If Huawei intends to accuse only these specified "components," its allegations are even more confusing because Huawei **also** includes open-ended, general allegations that T-Mobile's "wireless networks" and "services" as a whole infringe.

**Fourth**, Huawei adds another layer of ambiguity with excessive use of  open-ended language—"for example," "without limitation," "and/or," "such as," and "etc."—in all its direct infringement allegations, leaving T-Mobile with no way knowing which of the unnamed and otherwise unidentified components and functions in its networks are accused of infringing the asserted patents.  Huawei's over-use of this type of language separately justifies dismissal of its patent infringement claims.  *See Round Rock Research, LLC v. Oracle Corp.*, No. 4:11-cv-332, 2011 WL 11761563, at *3 (E.D. Tex. Oct. 25, 2011) (dismissing infringement claims against products not named in the complaint where "[p]laintiff's inclusion of the language 'including, but not limited to,' fails to inform Defendants of other products that might be accused of

---

[2] For example, the Background of the '750 patent states that the "Serving GPRS Supporting Node (SGSN) performs functionalities such as routing and forwarding, mobility management, session management, user information storage, etc. in the GPRS/UMTS network." '750 patent at 1:48-50.

infringement"), *report and recommendation adopted,* 2011 WL5837246 (E.D. Tex. Nov. 21, 2011).

Huawei's failure to specify the accused instrumentalities not only fails to provide fair notice, but also impedes T-Mobile's ability to investigate and assert defenses.  This includes first and foremost non-infringement, but also other defenses—such as those based on Huawei's licenses with T-Mobile's equipment suppliers.  For example, in January 2016, Huawei announced that it had entered into a license with Ericsson, which supplies certain components used in T-Mobile's networks.  Huawei acknowledges that it has been engaged in licensing negotiations with others and may also have entered licenses with other companies that have supplied network equipment to T-Mobile.  These licenses could give rise to a patent exhaustion based defense for T-Mobile, if Huawei is accusing components and features that it has already licensed.  Similarly, an understanding of what Huawei is accusing, and how it is applying the claims, will inform T-Mobile's investigation of invalidity defenses.  To allow T-Mobile to undertake a prompt investigation of such defenses, it is especially important that the complaint specifically identify what is accused.

### 2. Huawei Fails To Provide Notice Of <u>How</u> T-Mobile Infringes.

In addition to failing to identify *what* is accused of infringement, Huawei's complaint also provides no information as to *how* Huawei believes T-Mobile infringes the patents-in-suit. *See Via Vadis, LLC v. Skype, Inc.*, No. 11-507, 2012 WL 261367, at *2 (D. Del. Jan. 27, 2012) (dismissing complaint as failing to meet the standards of *Twombly* and *Iqbal* because "[t]here are simply no factual allegations advising Defendants how or why their products infringe on Plaintiff's patents, specifying what actions Defendants took that would warrant a conclusion that the infringement was willful or intentional, or supporting the claims that Defendants induced others to infringe"); *Raindance Techs.*, 2016 WL 927143, at *2 (dismissing complaint because "Plaintiff makes no attempt to relate any [of] their factual assertions with any of the asserted claims").

*First*, to the extent that any of Huawei's vague allegations could be considered factual allegations, they do not "state[s] a claim to relief that is plausible on its face" because they fail to explain how T-Mobile infringes the asserted patents.  *See Twombly*, 550 U.S. at 570. *PageMelding, Inc. v. ESPN, Inc.*, No. C 11-06263 WHA, 2012 WL 1534844 (N.D. Cal. Apr. 30, 2012), is instructive.  There, the plaintiff alleged that ESPN infringed a patent that "enables internet service [ISPs] and content providers [ICPs] to form mutually beneficial collaborations wherein website content is customized in accordance with those collaborations."  *Id.* at *1.  After its original complaint was dismissed on 12(b)(6) grounds, the plaintiff sought leave to amend to allege that the method ESPN used to create customized webpages was the same as the claimed method and that ESPN maintained an apparatus that performed the claimed method.  *Id.* at *2. Agreeing with ESPN that the plaintiff had not explained "how and why" defendant's websites infringed the method claims, the court denied the motion because "[e]ssentially, plaintiff's amended complaint boils down to the following accusation:  Plaintiff owns the '577 patent.  The patent discloses a method of creating websites by identifying a user's ISP. Defendant does the same thing."  *Id.*  The court explained the need to plead why and how the claims were infringed: "There are many ways to reach a destination and not everyone necessarily traveled the same path," and "[j]ust because defendant creates an end product similar to that created by plaintiff's patent does not give rise to a reasonable inference of infringement."  *Id*.

Here, Huawei's complaint mirrors the one rejected in *PageMelding*.  As discussed above, Huawei asserts three patents that are directed to specific features of the handover process in specific parts of a wireless network.  But rather than plead facts that explain *how* T-Mobile implements the claims in a way that would be sufficient to "allow[] the court to draw the reasonable inference" of patent infringement, *Iqbal*, 556 U.S. at 678, Huawei instead merely alleges that T-Mobile implements the end result—seamless handover from Wi-Fi to T-Mobile's networks.  Nowhere does Huawei allege those results are achieved *in the way that the claims require*.  Likewise, Huawei never explains what components or architecture within the

- 14 -

"Infringing Wireless Networks" correspond to any particular claim language.  In fact, because there could be a variety of ways to implement this function, Huawei's patent infringement allegations are equally consistent with ***non***-infringement.  *See Twombly*, 550 U.S. at 554, 557 (allegation of parallel conduct by alleged conspirators insufficient to suggest an unlawful agreement under Sherman Act because parallel conduct "could just as well be independent action").  In short, Huawei's allegations, like those in *PageMelding*, essentially boil down to an insufficient claim that:  "Huawei owns three patents.  They enable certain general network functions.  T-Mobile does those things, too.  Therefore, all of T-Mobile's networks and some unspecified network components infringe."

***Second***, Huawei's allegation that T-Mobile "promotes Wi-Fi Calling and further promotes seamless Wi-Fi calling handover with its Infringing Wireless Networks" by "specifically advertis[ing] 'seamless handover between our LTE network and any available Wi-Fi connection so calls don't drop between the two'"—is similarly insufficient.  Compl. ¶¶ 20, 43, 55, 67.  Huawei never explains how this feature is implemented, the components used to do so, or how the implementation of this feature has anything to do with any of the asserted claims.

***Finally***, some of Huawei's direct infringement allegations are facially implausible.  All but one of the asserted claims of the '779 patent are method claims, as are asserted claim 1 of the '677 patent and asserted claims 7, 8, 10, and 12-14 of the '750 patent.  Yet Huawei alleges only that T-Mobile uses the "claimed system" (i.e., a generic reference to T-Mobile's wireless networks) and that certain "unlicensed systems, products" and "components" infringe these patents.  *See Id*. ¶¶ 44, 56, 68.  Because method claims are only infringed when each step is practiced, it is unclear what these unnamed systems, products, or components do that could be considered performing the steps of the asserted method claims.  It appears that Huawei simply recycles its allegations for other patents without regard to the nature of these asserted claims.

**B.     Huawei's Induced Infringement Claims Should Be Dismissed For Failure To Plead Essential Elements.**

To state a claim for induced infringement, Huawei must plead facts plausibly showing that T-Mobile specifically intended for a third party to infringe the asserted patents and knew that the third party's acts constituted infringement.  *See Commil USA, LLC v. Cisco Sys. Inc.*, 135 S. Ct. 1920, 1926 (2015) ("[L]iability for inducing infringement attaches only if the defendant knew of the patent and that the induced acts constitute patent infringement." (citation and internal quotation marks omitted)); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) ("Liability under § 271(b) requires knowledge that the induced acts constitute patent infringement.") (citation and internal quotation marks omitted); *U.S. Ethernet Innovs., LLC v. Cirrus Logic, Inc.*, No. 6:12-cv-366, 2013 WL 8482270, at *3 (E.D. Tex. Mar. 6, 2013) (stating that complaint "must contain sufficient facts alleging a direct infringer and plausibly showing that [defendant] specifically intended a third party to commit acts that it knew constituted infringement").  This, in turn, requires facts plausibly showing T-Mobile was aware of the patents or willfully blind.  *See, e.g., Commil*,135 S. Ct. at 1926.

*First*, Huawei fails to allege that before the filing of this complaint, T-Mobile had actual knowledge of each patent *and* how T-Mobile allegedly infringed these patents—nor does Huawei allege facts sufficient to show T-Mobile was "willfully blind" to the patents and how they were allegedly being infringed.  Knowledge of the patent and how it is being infringed is required for a legally sufficient inducement claims, *see, e.g., Commil*, but is lacking in the complaint.

*Second*, Huawei fails to allege any facts plausibly showing direct infringement by T-Mobile's customers or by others.  Huawei asserts that users of T-Mobile's Infringing Wireless Networks infringe the asserted patent "by putting the claimed system into service by, for example, using the seamless handover capabilities of those Infringing Wireless Networks."  Compl. ¶¶ 44, 56, 68.  In its inducement allegations, Huawei states in a conclusory manner that "[o]n information and belief," T-Mobile "has infringed" by inducing users of its wireless

networks through "subscription plans, mobile devices and/or SIM cards" and by "instructing users how to enable Wi-Fi Calling on their mobile devices." Compl. ¶¶ 46-47, 58-59, 70-71.  At best, these allegations boil down to an assertion that users use T-Mobile's networks and a specific feature on their devices, which might trigger seamless handover.  Nowhere, however, does Huawei ever explain how a user or anyone else could use a service plan, SIM card, or mobile device to infringe any asserted claim, which are directed to specific network functions that are invisible to the user.

To begin with, neither service plans nor SIM cards actually access or use a wireless network:  according to Huawei's own complaint, the service plan merely ***authorizes*** a customer to access the network through the mobile device, and a SIM card contains subscriber information.  *Id.* ¶ 18.  As for mobile devices, these are used to send and receive calls and data (*id.* ¶ 20), and Huawei never alleges how they are related to any function or component in the network that purportedly infringes any claim.  The same is true for the allegations about resellers.  In a single unintelligible sentence in each patent count, Huawei asserts that "T-Mobile actively induces authorized resellers, including by instructing, promoting, encouraging, providing or selling promotional materials, for use in facilitating sales of its service plans, mobile devices, and/or SIM cards, that allow access to the Infringing Wireless Networks, including but not limited to the seamless handover capabilities of the networks . . . ."  *Id.* ¶¶ 47, 59, 71.  Nothing in this sentence identifies what act by a reseller allegedly constitutes direct infringement by resellers.

***Third***, Huawei does not plead sufficient facts to allow an inference of specific intent to infringe.  As discussed above, Huawei does not even allege the threshold requirement that before the filing of the complaint, T-Mobile knew of each patent and how it was allegedly infringed.  Moreover, Huawei does not allege facts sufficient to support that T-Mobile ***specifically intended*** such alleged infringement—and acted to induce actual infringement.  Huawei alleges that T-Mobile knowingly took "active steps" including "but not limited to" "encouraging, advertising

(including by internet websites, television, store displays, print advertisements, etc.), promoting, and instructing others to use and/or how to use the seamless handover capabilities of the Infringing Wireless Networks via its service plans, mobile devices, and/or SIM cards" and "instructing users how to enable Wi-Fi Calling on their mobile devices."  *Id.* ¶¶ 47, 59, 71.  In other words, Huawei alleges that T-Mobile induces its customers and others to infringe by helping them access T-Mobile's networks, which are capable of performing a generic function— seamless handover—and enable Wi-Fi Calling.  But T-Mobile is a network operator, and providing its customers access to its networks is simply an ordinary business activity.  Huawei makes no attempt to explain how such activity relates to the claims, that T-Mobile was aware of the alleged infringement, or that T-Mobile had the specific intent to cause infringement.  *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305-06 (Fed. Cir. 2006) (affirming jury finding of no inducement and holding that district court correctly instructed jury that inducement required "proof that the defendant knowingly induced infringement with the intent to encourage the infringement").  Without these essential elements, Huawei's inducement allegations, at most, describe nothing more than T-Mobile's ordinary business activities and are not a sufficient basis to claim induced infringement.

Huawei's allegations that T-Mobile "knows or should know that its activities induced others to directly infringe," Compl. ¶¶ 48, 60, 72, also fail.  The only fact that Huawei asserts to support this allegation is that T-Mobile "prompt[s]" users to use the mobile devices, service plans and/or SIM cards to access the network and make use of the seamless handover feature.[3]

---

[3] Huawei also misstates the elements:  Huawei cannot satisfy this element by simply showing that T-Mobile "should know" of the patent.  As discussed above, *Commil* and *Global-Tech* require actual knowledge or evidence of willful blindness sufficient for a finding of knowledge. *Global-Tech Appliances, Inc. v. SEB S. A.*, 131 S. Ct. 2060, 2070-71 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts."); *Commil*, 135 S. Ct. at 1926-28 ("[L]iability for inducing infringement can only attach only if the defendant knew of the patent and that 'the induced acts constitute patent infringement.'" (quoting *Global-Tech*, 131 S. Ct. at 2068 (2011)).

But this "fact," even if true, supports only an inference that T-Mobile assists its customers to use the network—an ordinary activity in its business—but says nothing about whether T-Mobile knew that any acts by its customers constituted infringement of any patent, let alone the asserted patents.  The Federal Circuit has affirmed the dismissal of complaints that fail to allege any facts in support of this knowledge requirement.  *See Superior Indus., LLC. v. Thor Global Enters. Ltd.*, 700 F.3d 1287, 1296 (Fed. Cir. 2012) (affirming dismissal of indirect infringement claims where plaintiff did not "allege any facts to support a reasonable inference that [defendant] specifically intended to induce infringement of the '231 Patent or that it knew it had induced acts that constitute infringement").[4]

### C.     Huawei's Contributory Infringement Claims Should Be Dismissed For Failure To Plead Essential Elements.

To state a valid claim for contributory infringement, Huawei must allege facts plausibly showing that (1) T-Mobile had knowledge of the asserted patent and of the infringement; (2) T-Mobile knew that the accused instrumentality constitutes a "material part of the [claimed] invention" and has "no substantial non-infringing uses"; (3) T-Mobile knew the accused products were "especially made or especially adapted" to infringe the asserted patent; and (4) that one or more third parties used the accused products to directly infringe the patent.  *See* 35 U.S.C. § 271(c); *In re Bill of Lading*, 681 F.3d at 1331 ("To state a claim for contributory infringement, therefore, a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses."); *Commil*, 135 S.

---

[4] Moreover, Huawei's preface of these allegations with "on information and belief" does not save its inducement claims.  Although *Twombly* does not prohibit the use of "on information and belief," the belief must "stem[] from factual information that makes the inference of culpability plausible."  *Universal City Studios v. Nissim Corp*., Nos. 14-81344, 14-81349, 14-81350, WL 1124704,, at *3 (S.D. Fla. Mar. 12, 2015); *see also Affinity Labs of Texas v. Toyota Motor N. Am.*, No. W:13-cv-365, 2014 WL 2892285, at *9 (W.D. Tex. May 12, 2014) (general assertions that "on information and belief" defendant, through marketing and selling automobiles encourage customers to infringe Bluetooth patents insufficient to support induced infringement).

Ct. at 1926 ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement.").

Each count in Huawei's complaint contains a single contributory infringement paragraph, again prefaced with "[o]n information and belief," that "the sale, offer for sale, and/or import by T-Mobile of Wi-Fi calling and seamless handover enabled mobile service plans, devices and/or SIM cards" contributes to infringement by others.  Compl. ¶¶ 49, 61, 73; *see also id.* ¶¶ 24-27 (similar paragraphs in the general allegations).  This paragraph also asserts, in conclusory fashion, that "[s]uch Wi-Fi Calling and seamless handover enabled mobile service plans, devices and/or SIM cards" are "especially adapted for use with and/or access to T-Mobile's Infringing Wireless Networks and are not suitable for substantial noninfringing use."  *Id.* ¶¶ 49, 61, 73. Huawei also alleges that "[o]n information and belief," T-Mobile knows that these service plans, mobile devices and/or SIM cards are especially adapted for use with its Infringing Wireless Networks, including the seamless handover capabilities and are not suitable for substantial non-infringing uses.  *Id.*  In addition to failing to adequately plead direct infringement, as described above, or knowledge of the purported infringement, these allegations fail to state a claim for contributory infringement for several other reasons.

*First*, as with inducement, Huawei fails to allege that before the filing of this complaint, T-Mobile had knowledge of each asserted patent *and* how T-Mobile's actions contributed to infringement of these patents.  Without this state-of-mind evidence, the contributory infringement claims fail as a matter of law.

*Second,* Huawei alleges that "*once configured to access T-Mobile's Infringing Wireless Networks*, such service plans, mobile phones, and/or SIM cards are at least material components that do not have any substantial uses other than to access T-Mobile's Infringing Wireless Networks."  *Id.* ¶ 23 (emphasis added); *see also id.* ¶¶ 49, 61, 73.  Other than these conclusory assertions, Huawei pleads no specific facts that would permit a plausible inference that these components have no substantial non-infringing use.  This allegation is like the example rejected

by the Federal Circuit in *In re Bill of Lading*: "they say nothing more than 'if you use this device to perform the patented method, the device will infringe and has no noninfringing uses.'"  681 F.3d at 1338.  The relevant inquiry is not whether "once configured" to access the accused network, these components have substantial noninfringing use.  Rather, the relevant inquiry "focuses on whether the accused products can be used for purposes *other than* infringement."  *Id.* Under this inquiry, Huawei's allegation that T-Mobile "instruct[s] others to use and/or how to use" a certain allegedly infringing function of the "Infringing Wireless Network via its service plans, mobile devices, and/or SIM cards" actually creates an inference that these components might otherwise be used in a non-infringing manner—i.e., by using functions other than the one identified by Huawei.

In *U.S. Ethernet Innovs., LLC v. Cirrus Logic, Inc*., for example, the plaintiff alleged contributory infringement, and argued that the element of "no substantial non-infringing uses" could be inferred from the allegations that the accused products "embody the patented invention" and defendant's "customers who purchase systems and components thereof and operate such systems and components thereof in accordance with [Yamaha's] instructions directly infringe one or more claims."  2013 WL 8482270, at *4.  The court found these allegations insufficient "to create a reasonable inference that the accused components have no substantial non-infringing use."  *Id*.  In fact, the court went further and noted that "USEI's allegation that customers infringe when they use operating systems and components *in accordance with Yamaha's instructions* actually creates an inference that they might otherwise be used in a non-infringing manner."  *Id*.  The same is true here:  for example, in its inducement claim for the '779 patent, Huawei alleges that T-Mobile induces its customers by instructing them "that Wi-Fi calls may be seamlessly handed over to T-Mobile's Infringing Wireless Networks" and "how to enable Wi-Fi Calling on their mobile device."  Compl. ¶ 47; *see also id*. ¶¶ 59, 71.  These allegations suggest that there are other uses of the service plans, mobile devices, and SIM cards—and of T-Mobile's

networks—than seamless handover between Wi-Fi networks and T-Mobile's cellular networks, e.g., such as when Wi-Fi is turned off.

*Third*, Huawei's conclusory allegations that the service plans, mobile devices, and SIM cards have no substantial non-infringing uses are not plausible on their face.  According to Huawei's own complaint, customers use the service plans, mobile devices, and SIM cards to access and use T-Mobile's "***Infringing Wireless Networks***"—i.e., the entire network and its thousands of features and functions, ***not*** just the parts (whatever they are) that Huawei believes are covered by the asserted patents.  *Id.* ¶¶ 47, 59, 71, 83.  Moreover, Huawei's failure to identify the specific components or other parts of the T-Mobile's networks and link them to the service plans, mobile devices, or SIM cards dooms these allegations.

*Fourth*, the complaint does not identify any specific component or material that could plausibly be deemed part of T-Mobile's wireless networks.  Huawei relies solely on the fact that T-Mobile provides "service plans, mobile devices and/or SIM cards," but then alleges that these service plans, mobile devices, and SIM cards allow "***use with and/or access to***" the "Infringing Wireless Networks"—but are not a part of the accused networks.  *Id.* ¶¶ 49, 61, 73.  In short, Huawei's own complaint demonstrates that the service plans, mobile devices, and SIM cards ***cannot*** satisfy this element of contributory infringement.  Huawei also fails to identify any other component ***of the accused network*** that could satisfy the "material part of the [claimed] invention" element.

### D.  Huawei Fails To State A Valid Claim For Willful Infringement.

To state a claim for willful infringement, Huawei must allege specific facts showing that (1) T-Mobile "acted despite an objectively high likelihood that its action constituted infringement of a valid patent," and (2) "this objectively-defined risk … was either known or so obvious that it should have been known to" T-Mobile.  *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007); *see also U.S. Ethernet Innovs., LLC*, 2013 WL 8482270, at *3

(explaining that "claims for indirect infringement or willful infringement must be judged by the pleading standards articulated in *Twombly* and *Iqbal*").

Ignoring this stringent standard, Huawei's willfulness claim for each patent consists of the same conclusory paragraph:

> T-Mobile undertook and continues its infringing actions despite an objectively high likelihood that such activities infringed the [asserted] patent, which has been duly issued by the USPTO, and is presumed valid.  For example, since at least the filing of this action, T-Mobile has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement of the [asserted] patent, and that the [asserted] patent is valid.  On information and belief, T-Mobile could not reasonably, subjectively believe that its actions do not constitute infringement of the [asserted] patent, nor could it reasonably, subjectively believe that the patent is invalid.  Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, T-Mobile has continued its infringing activities.  As such, T-Mobile willfully infringes the [asserted] patent.

Compl. ¶¶ 51, 63, 75, 87.  These conclusory sentences amount to nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"—the very type of allegations that *Twombly* and *Iqbal* rejected as inadequate to state a claim for relief.  *See Iqbal*, 556 U.S. at 680-87; *Twombly*, 550 U.S. at 555 (pleading standard requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action").  Claims for willful infringement have been dismissed under similar circumstances.  For example, in *U.S. Ethernet*, the plaintiff alleged that "Defendants have had actual or constructive knowledge of the [Patent], yet continue to infringe said patent" and "[t]he infringement of the [Patent] by Defendants is willful and deliberate."  2013 WL 8482270, at *5.  The court dismissed the claim because it was "devoid of any facts that create an inference of Yamaha's objective recklessness."  *Id*.  For this reason alone, Huawei's claims for willful infringement require dismissal as a matter of law.  *See also Achates Reference Pub., Inc. v. Symantec Corp.*, No. 2:11-cv-294-JRG-RSP, 2013 WL 693955, at *3 (E.D. Tex. Jan. 10, 2013) (dismissing "bare assertion" of willful infringement as "not sufficient to plead a plausible claim

for relief"); *InMotion Imagery Techs. v. Brain Damage Films*, No. 2:11-cv-414-JRG, 2012 WL 3283371, at *4 (E.D. Tex. Aug. 10, 2012) (same).

Huawei also fails to allege a critical element of willfulness:  that, **before** the suit was filed, T-Mobile knew of each of the asserted patent **and** that its conduct likely constituted infringement.  *See In re Seagate Tech., LLC*, 497 F.3d at 1374 (because "a patentee must have a good faith basis for alleging willful infringement" when the lawsuit is filed, the willfulness claim "*must necessarily be grounded exclusively in the accused infringer's pre-filing conduct*" (emphasis added)); *Touchscreen Gestures LLC v. Research in Motion Ltd.*, No. 6:12-cv-263, 2013 WL 8505349, at *2 (E.D. Tex. Mar. 27, 2013) (same); *ReefEdge Networks, LLC v. Juniper Networks, Inc.*, No. 13-cv-412, 2014 WL 1217263, at *2-3 (D. Del. Mar. 21, 2014) (dismissing willful infringement claim because "[plaintiff] has not pled sufficient facts to successfully allege [defendant's] pre-suit knowledge of the patents-in-suit or that [plaintiff] knowingly acted with an objectively high likelihood of infringement").  Huawei's willfulness allegations are based only on post-filing conduct:  "*since at least the time of this filing*, T-Mobile has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement." Compl. ¶¶ 51, 63, 75 (emphasis added).  Such failure to plead any facts that could plausibly support a finding of willfulness justifies dismissal of the claim.

## V.      CONCLUSION

For the reasons set forth above, Huawei's complaint should be dismissed.

March 21, 2016

/s/ Samuel F. Baxter
Samuel F. Baxter
Lead Attorney
Texas State Bar No. 01938000
sbaxter@McKoolSmith.com
Jennifer Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
MCKOOL SMITH, P.C.
104 E. Houston Street, Suite 300
P.O. Box O
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9009

Mark D. Selwyn
(*pro hac vice* pending)
(California Bar No. 244180)
Kathryn D. Zalewski
(*pro hac vice* pending)
(California Bar No. 263119)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
(650) 858-6000

Joseph J. Mueller
(*pro hac vice* pending)
(Massachusetts Bar No. 647567)
Cynthia Vreeland
(Texas Bar No. 20625150
Massachusetts Bar No. 635143)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Defendants T-Mobile US, Inc.*
*and T-Mobile USA, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing document was served on all counsel of record via electronic mail in accordance with Local Rule CV-5(a)(7)(C).

Dated: March 21, 2016                    <u>*/s/* Sam Baxter</u>
                                         Sam Baxter