**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **HUAWEI TECHNOLOGIES CO. LTD.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 2:16-cv-00056-JRG-RSP** |
| **T-MOBILE US, INC. and** **T-MOBILE USA, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## HUAWEI'S OPPOSITION TO T-MOBILE'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.   COMPLAINT BACKGROUND ..................................................................... 2

   A.   Huawei's Asserted Patents Allow Seamless and Reliable Handover between Networks.. 2

   B.   T-Mobile's Wireless Networks................................................................. 4

   C.   T-Mobile's Unwillingness to Engage in Good Faith Pre-Suit Negotiations ................... 5

II.  LEGAL STANDARDS ................................................................................ 5

III.  ARGUMENT ............................................................................................ 7

   A.   Huawei's Direct Infringement Allegations Satisfy the Pleading Standards ..................... 7

   B.   Huawei's Indirect Infringement Allegations Also Satisfy the Pleading Standards .......... 10

     1.   T-Mobile is on Notice of Huawei's Induced Infringement Allegations ...................... 10

     2.   T-Mobile is on Notice of Huawei's Contributory Infringement Allegations .............. 13

   C.   T-Mobile Should Not Benefit from Its Willful Blindness ................................................ 16

   D.   In the Alternative, Huawei Should Be Granted Leave to Amend Its Complaint.............. 17

IV.  CONCLUSION ........................................................................................ 18

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Achates Reference Pub., Inc. v. Symantec Corp.*,
   No. 2:11-cv-00294-JRG-RSP, 2013 WL 693955 (E.D. Tex. Jan. 10, 2013) .........................11

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) .............................................................................................................6

*Bell Atl. Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) .............................................................................................................6

*In re Bill of Lading Transmission*,
   681 F.3d 1323 (Fed. Cir. 2007) ..........................................................................................7, 13

*Bustos v. Martini Club, Inc.*,
   599 F.3d 458 (5th Cir. 2010) ...................................................................................................6

*Cascades Computer Innovation, LLC v. Motorola Mobility Holdings, Inc.*,
   No 11 C 4574, 2012 WL 2086473 (N.D. Ill. May 22, 2012) ..................................................12

*Charles E. Hill & Assocs. v. ABT Elecs., Inc.*,
   No. 2:09-cv-313, 2010 WL 3749514 (E.D. Tex. Aug. 31, 2010)............................................12

*EmeraChem, Holdings, LLC v. Volkswagen Grp. Of Am., Inc.*,
   No. 3:14-CV-132, 2014 WL 5795027 (E.D. Tenn. Nov. 6, 2014) ..........................................14

*Geotag, Inc. v. The Western Union Co.*,
   No. 2:10-cv-574, Dkt. No. 434, 3-4 (E.D. Tex. Dec. 14, 2011) ...............................................9

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   131 S. Ct. 2060 (2011).............................................................................................................16

*Herrmann Holdings Ltd. v. Lucent Tech., Inc.*,
   302 F.3d 552 (5th Cir. 2002) ..................................................................................................17

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
   714 F.3d 1277 (Fed. Cir. 2013)................................................................................................8

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) ...................................................................................................6

*McZeal v. Sprint Nextel Corp.*,
   501 F.3d 1354 (Fed. Cir. 2007)................................................................................................8

*Skinner v. Switzer*,
    131 S. Ct. 1289 (2011) ...............................................................................................5

*Tierra Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*,
    No. 2:13-CV-44-JRG, 2014 WL 1233040 (E.D. Tex. Mar. 24, 2014)....................................11

*Tune Hunter Inc. v. Samsung Telecomms. Am., LLC*,
    No. 2:09-cv-148, 2010 WL 1409245 (E.D. Tex. Apr. 1, 2010) ...................................9, 10, 14

*United States v. Bollinger Shipyards, Inc.*,
    775 F.3d 255 (5th Cir. 2014) ...................................................................................6

*Versata Software, Inc. v. Callidus Software, Inc.*,
    944 F. Supp. 2d 357 (D. Del. 2013)..........................................................................15

*Wooten v. McDonald Transit Assocs., Inc.*,
    788 F.3d 490 (5th Cir. 2015) ...................................................................................6

*Zond, Inc. v. SK Hynix Inc.*,
    No. 13-11591-GRS, 2014 WL 346008 (D. Mass. Jan. 31, 2014)...........................................13

**Other Authorities**

Federal Rules of Civil Procedure 8, 12, 15 .......................................................5, 6, 12, 13

Loca Patent Rule 3-1...............................................................................................9

T-Mobile should not be surprised that "Huawei's complaint broadly accuses every T-Mobile wireless network," because T-Mobile's infringement of the three patents-in-suit is pervasive and fundamental to the operation of T-Mobile's wireless network services.  As alleged in the Complaint, each of T-Mobile's wireless networks and services infringe because the network-to-network handover inventions claimed in Huawei's patents-in-suit are central to the operation of a modern wireless network.  Indeed, T-Mobile's Motion to Dismiss reveals that it is sufficiently apprised of Huawei's allegations because it identifies that the technology accused is actually "invisible" to the public.[1]  Nonetheless, using publicly available information, Huawei's Complaint specifically identified the networks, known network components, and related functionality that it accuses of infringement.

Without the benefit of discovery, Huawei has sufficiently stated its claims for relief as required under the law by identifying the breadth of T-Mobile's infringement in its Complaint and also identifying the specific components of T-Mobile's wireless network that embody specifically identified claims in each of the patents-in-suit.  Huawei used well accepted industry terminology to identify the components that interoperate in T-Mobile's network to utilize the Huawei seamless and reliable handover inventions.  For example, Huawei specifically identified "T-Mobile's 2G, 3G, and 4G LTE wireless networks ('Infringing Wireless Networks')" and that "these wireless networks utilize network components, such as PGWs, SGSNs, GGSNs, SGWs, MMEs, *etc*." Huawei's Complaint, ¶¶ 17 and 21.

In short, T-Mobile had no trouble identifying its "invisible" network components (including their combination and configuration) and T-Mobile knows precisely what is accused of

---

[1] T-Mobile concedes that the "asserted claim[s] are directed to specific network functions ***that are invisible to the user***"—in contrast, T-Mobile knows where and how these specific network functions are implemented. (T-Mobile's Motion at 17 (emphasis added).)

HUAWEI'S OPPOSITION TO T-MOBILE'S MOTION TO DISMISS                    1

infringement and what it must defend.  Moreover, per the Local Patent Rules, Huawei will soon provide additional details regarding the accused instrumentalities and Huawei's allegations for how they infringe the Asserted Patents.  To require Huawei to provide such detail at the pleading stage, as T-Mobile insists, would render the Local Patent Rules superfluous and demand of Huawei significantly more than what the federal pleading standards require.  Yet T-Mobile filed this Motion, while throwing mud at Huawei from a wholly unrelated dispute,[2] rather than answering the Complaint and moving *this* dispute forward.  Given that T-Mobile will receive the detailed infringement contentions before a case schedule is set by the Court, the purpose of T-Mobile's Motion is questionable at best.

Huawei's Complaint satisfies the legal requirement to make a short and plain statement of the claims showing that the pleader is entitled to relief.  T-Mobile's Motion shows that it is fully apprised of each of Huawei's allegations and, as a result, its Motion should be denied.

## I.    COMPLAINT BACKGROUND

### A. Huawei's Asserted Patents Allow Seamless and Reliable Handover between Networks

As detailed in the Complaint, Huawei is a global leader of information and communication technology solutions.  (Dkt. No. 1 at ¶ 2 [hereinafter, "Huawei's Complaint"].)  Huawei is heavily involved in the research, innovation, and implementation of wireless networks.  (*See id.* at ¶ 3.) Huawei's involvement in improving wireless networks includes its research and development related to features for ensuring or improving the handover capabilities of wireless networks.  (*Id.*

---

[2] Out of the gate, T-Mobile spends a full page on "Western District of Washington Litigation" – a non-patent case that has no relationship to the patents in this case – as supposed "Factual Background" for this Court's consideration.  Curiously, in the argument portion of its brief, T-Mobile never cites back to the Washington litigation, leading one to question why it presented the description of that unrelated litigation to the Court in the first place.

at ¶ 12.)  These features include, for example, the seamless handover of a mobile device between a 3GPP network and a non-3GPP network, such as, for example, a handover from a Wi-Fi network to an LTE network or vice versa.  (*Id.*)  Further, such features allow, for example, a user to place a call over a Wi-Fi network, and then continue the call on an LTE network without service interruption when moving between networks.  (*Id.*)

Huawei holds multiple patents in the field of network-to-network handover.  Among those patents are the three patents at issue in this case: U.S. Patent Nos. 8,537,779 ("the '779 patent"); 8,031,677 ("the '677 patent"); and 8,638,750 ("the '750 patent") (collectively, the "Asserted Patents").  Huawei's Complaint attached the patents as exhibits (1 through 3) and specifically identified asserted claims:

| Compl. Ex. | Patent No. | Title | Identified Claims |
|---|---|---|---|
| 1 | 8,537,779 | Method, System, and Apparatus for Registration Processing | at least claims 1, 4-5, 9-10, 11 |
| 2 | 8,031,677 | Method, System, and Device for User Detachment when a Handover or Change Occurs in Heterogeneous Network | at least claims 1-4, 8-11 |
| 3 | 8,638,750 | Method and Network Device for Creating and Deleting Resources | at least claims 1, 2, 4, 6-8, 10, 12-14, 16-17 |

At a high level, the patented systems and methods all relate to providing reliable and seamless handover between networks.

The '750 and '779 patents relate to improved handovers from a non-3GPP system (such as WiFi or WiMAX) to a 3GPP system (such as LTE or 3G systems).  For example, one of the goals of the '750 and '779 patents is to provide a more seamless handover experience when the user transfers from non-3GPP to 3GPP systems through an improved registration processing method

HUAWEI'S OPPOSITION TO T-MOBILE'S MOTION TO DISMISS                3

so that the user does not experience content interruptions during the handover.  (*E.g.*, '779 patent at Abstract.)

The '677 patent is directed to a method for user detachment during a handover from a 3GPP network (e.g., LTE) to a non-3GPP network (e.g., Wi-Fi, CDMA, etc.).  For example, when a user equipment is handed over from a source network to a target network, a network element on the network side determines whether to detach the user equipment and the associated resources.  (*E.g.,* '677 patent at Abstract.)

### B.  T-Mobile's Wireless Networks

As detailed in the Complaint, T-Mobile is among the leading providers of wireless networks in the United States, including those branded as MetroPCS.  (*See*, *e.g.*, Huawei's Complaint at ¶¶ 14 and 15.)  Indeed, T-Mobile claims to comprise "the fastest growing wireless company in the U.S., based on customer growth in 2014, currently providing wireless communications services, including voice, messaging and data, to over 55 million customers in the postpaid, prepaid, and wholesale markets." (*Id.* at ¶ 17.)  T-Mobile further claims to "offer[] customers a great service on a nationwide 4G Long-Term Evolution ('LTE') network, devices when and how they want them, and plans that are simple, affordable and without unnecessary restrictions." (*Id.*)

 Based on T-Mobile's public information, Huawei's Complaint accuses T-Mobile's networks, which "promote seamless Wi-Fi calling handover with its Infringing Wireless Networks in violation of Huawei's patent rights." (*Id.* at ¶ 20.)  For example, T-Mobile advertises "seamless handover between our LTE network and any available Wi-Fi connection so calls don't drop between the two." (*Id.*)  T-Mobile accomplishes this seamless handover through its use of various network components, such as PGWs, SGSNs, GGSNs, SGWs, MMEs, *etc.*  (*Id.* at ¶ 21.)  Though

it is public knowledge that wireless providers use these types of network components, the exact configuration of these components and their use in T-Mobile's networks in particular are invisible to the public, as T-Mobile itself admits.  (*See* T-Mobile's Motion at 17.)  Far from T-Mobile's assertion of "virtually no substance explaining how T-Mobile's products or services purportedly infringe any of the asserted claims," Huawei's Complaint quotes and cites at least 10 different public sources to show T-Mobile's unlicensed activities.

### C.  T-Mobile's Unwillingness to Engage in Good Faith Pre-Suit Negotiations

Huawei's Complaint also details T-Mobile's unwillingness to engage in good faith negotiations.  In an effort to avoid litigation, Huawei contacted T-Mobile in June 2014 to discuss Huawei's Licensing Program.  (Huawei's Complaint at ¶ 28.)  At that time, Huawei identified various example patents and identified services offered by T-Mobile that related to patents in Huawei's portfolio.  (*See id.*)  Huawei offered that the parties enter into a mutual non-disclosure agreement so that Huawei could provide more detail regarding its portfolio and its Licensing Program.  (*See id.*)  T-Mobile refused to sign the agreement, rejecting the idea to exchange information.  (*See id.* at ¶ 29.)  Despite Huawei's explanation that signing the agreement would allow the parties to freely communicate about Huawei's Licensing Program and discuss non-public information, such as Huawei's analysis regarding T-Mobile's infringement, T-Mobile persisted in its refusal to enter any agreement or discuss Huawei's Licensing Program.  (*See id.* at ¶¶ 30-31.)

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has explained that a sufficient claim under Rule 8(a)(2) "generally requires only a plausible 'short and plain' statement of the plaintiff's claim, ***not an exposition of his legal argument***." *Skinner v.*

*Switzer*, 131 S. Ct. 1289, 1296 (2011) (emphasis added).  To survive a motion to dismiss, a complaint must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974-75 (2007).  This plausibility standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 127 S. Ct. at 1965).

When considering a motion to dismiss under Rule 12(b)(6), a court "accept[s] all well-pleaded facts as true, and view[s] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).  The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Upon viewing the facts most favorably to the plaintiff, the court must then decide whether those facts state a claim for relief that is plausible on its face. *See Bowlby*, 681 F.3d at 217. "A claim is plausible if 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement' . . . ." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014) (citing *Iqbal*, 129 S. Ct. at 1937).  Instead, the standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 545.  "The factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555)).

## III.    ARGUMENT

### A.  Huawei's Direct Infringement Allegations Satisfy the Pleading Standards

Huawei's direct infringement allegations are more than sufficient to put T-Mobile on notice of what is accused of infringement.  It is well settled that the pleading need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *In re Bill of Lading Transmission*, 681 F.3d 1323, 1357 (Fed. Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1955). Huawei's Complaint does that, first by identifying the specific claims of each patent alleged to be infringed.  (*See*, *e.g.*, Huawei's Complaint at ¶¶ 44, 56, 68.)  Huawei further identified T-Mobile's wireless networks that infringe and for each patent identified in particular that the networks "allow for seamless handover between Wi-Fi networks and its Infringing Wireless Networks."  (*Id.* at ¶¶ 44, 56, 68.)  Huawei also identified specific components that are involved in T-Mobile's infringement, including, for example, "PGWs, SGSNs, GGSNs, SGWs, MMEs, *etc.*"[3] (*Id.* at ¶ 21.) Importantly, Huawei made specific allegations for each patent:

- "MMEs, PGWs, SGSNs" for the '779 and '750 patents (*Id.* at ¶¶ 45 and 69)

- "MMEs, PGWs, SGWs" for the '677 patent (*Id.* at ¶ 57).

T-Mobile knows how its networks and how these identified components work; it needs no more information to know what they must defend.

In contrast to T-Mobile's intimate knowledge of its own networks, T-Mobile admits the accused technology is "invisible" to others.  In these circumstances, the Federal Circuit has

---

[3] Furthermore, these are industry-accepted terms that have been in use since the inception of wireless standards. For example, as explained above, both Huawei and T-Mobile are participants in the 3GPP standard, which identified core network functions like MME, SGSN, GGSN, and RNC in initially describing its network architecture as early as 1999. *See* 3rd Generation Partnership Project, Technical Specification Group Services and Systems Aspects, Network Architecture, 3GPP 3G TS 23.002, v.3.1.0 (Sept. 1999) (available at http://www.3gpp.org/ftp/specs/archive/23_series/23.002/23002-310.zip).

HUAWEI'S OPPOSITION TO T-MOBILE'S MOTION TO DISMISS                    7

recognized that patentees have access to limited information at the outset of a litigation and cannot be expected to provide details in a complaint that require discovery:

> That [a plaintiff] cannot point to the specific device or product within [a defendant's] systems that [infringes]—***especially when the operation of those systems is not ascertainable without discovery***—should not bar [a plaintiff's] filing of a complaint. A defendant cannot shield itself from a complaint for direct infringement by operating in such secrecy that the filing of a complaint itself is impossible. Nor is a defendant immune from a direct infringement claim because he does not make a "device" but, rather, infringes through a system or method.

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013) (emphasis added);[4] *see also McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1358 (Fed. Cir. 2007) ("At this stage in the litigation, all McZeal has access to is Sprint Nextel's public statements and advertisements. From this information he has fashioned his complaint. In this case, the specifics of how Sprint Nextel's purportedly infringing device works is something to be determined from discovery.")

Huawei has access only to T-Mobile's public statements and advertisements concerning the accused networks, along with the knowledge of T-Mobile's participation in and adoption of standards that govern its wireless networks. Because Huawei does not have access to T-Mobile's backend network configurations and software without discovery, the law does not require Huawei to plead more detail for this case to proceed. Rather, Huawei is required only to provide sufficient notice for T-Mobile to know what they must defend. To that point, Huawei's Complaint identified the specific networks, specific network components, and specific accused functionality for each patent.

---

[4] Although in *K-Tech* the Federal Circuit was analyzing former Form 18, here it recognized that even the simple pleading of Form 18 could be too restrictive. Huawei's Complaint went far beyond the pro forma allegations of the former Form 18.

HUAWEI'S OPPOSITION TO T-MOBILE'S MOTION TO DISMISS                    8

T-Mobile's demand for more detail is simply a demand for infringement contentions before they are due.  This Court has adopted the Local Patent Rules, which govern when a plaintiff is required to provide greater detail or specificity with respect to its infringement theories.  T-Mobile's "demand for greater specificity and more detailed notice of [Huawei]'s infringement theories is addressed by the Court's Local Patent Rules, such as the Patent Rule 3-1 requirement for disclosure of asserted claims and infringement contentions." *Geotag, Inc. v. The Western Union Co.*, No. 2:10-cv-574, Dkt. No. 434, 3-4 (E.D. Tex. Dec. 14, 2011) (citing *Tune Hunter Inc. v. Samsung Telecomms. Am., LLC*, No. 2:09-cv-148, 2010 WL 1409245, at *4 (E.D. Tex. Apr. 1, 2010)).  This Court has thus held that "it is in the discovery phase of litigation, not pleading, that the parties are required to conscientiously develop facts that support the various theories of infringement . . . ." *Tune Hunter*, 2010 WL 1409245 at *4.  Therefore, Huawei need only meet the notice pleading required under *Iqbal* and *Twombly* to put T-Mobile on "notice as to what [it] must defend"—additional details are properly addressed by the Court's Local Patent Rules.  *See id.*

Finally, T-Mobile's argument that Huawei's use of "open-ended language" renders its allegations insufficient to state a claim is incorrect.  The sole case upon which T-Mobile relies is distinguishable.  In *Round Rock Research, LLC v. Oracle Corp.*, the plaintiff Round Rock asserted, in a single complaint, infringement of nine separate and unrelated patents containing a total of 303 claims.  No. 4:11-cv-332, 2011 WL 11761563, at *2 (E.D. Tex. Oct. 25, 2011).  Round Rock's complaint did not differentiate between the patents, putting forth the following language to identify all of the accused products: "infringing systems, including, but not limited to, servers implementing a remote monitoring system, such as the [Oracle Integrated Lights-Out Manager ('ILOM')/Dell Remote Access Card ('DRAC')]." *Id.*  This Court held that despite Round Rock's use of the open-ended language "including, but not limited to," this language was sufficient to

state a claim against only "servers implementing a remote monitoring system"; it was insufficient to state a claim against any other products because it did not identify any other products in its complaint, either by name, description, or accused feature.  *See id.*

Here, Huawei has identified the infringing systems as T-Mobile's wireless networks and the specific components thereof that perform various functions, similar to Round Rock's accusation of "servers implementing a remote monitoring system," which the Court held was sufficient to state a claim.  *See id.* at *3.  Huawei's use of open-ended language is simply a reflection of its present inability to limit its infringement theories to specific products, systems, or methods without further discovery.  Huawei's Complaint is thus distinguishable from Round Rock's because Huawei is not asserting multiple unrelated patents at once, and its Complaint does not simply accuse a single feature and then, in open-ended fashion, attempt to cover any other possible technology utilized by T-Mobile.  Huawei's allegations are focused, using open-ended language only because the specific configurations of T-Mobile's systems are invisible to the public.

Huawei's Complaint puts T-Mobile on notice of what they must defend: the methods and components of their wireless networks that enable the functionalities identified in the Complaint. The law requires nothing further of Huawei for this case to proceed.  Therefore, the Court should deny T-Mobile's motion.

**B.  Huawei's Indirect Infringement Allegations Also Satisfy the Pleading Standards**

### 1.  T-Mobile is on Notice of Huawei's Induced Infringement Allegations

Huawei's Complaint sufficiently pled claims for induced infringement.  First, Huawei properly alleged that T-Mobile has had knowledge of the Asserted Patents "since at least the filing of this action." (Huawei's Complaint at ¶¶ 51, 63, 75.)  This Court has held such allegations to

suffice to plead a claim for induced infringement.  *See, e.g.*, *Tierra Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*, No. 2:13-CV-44-JRG, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[B]ecause [the plaintiff] has alleged post-suit knowledge, it has properly pled induced infringement with respect to [accused] phones distributed after service of the Complaint."); *Achates Reference Pub., Inc. v. Symantec Corp.*, No. 2:11-cv-00294-JRG-RSP, 2013 WL 693955, at *2 (E.D. Tex. Jan. 10, 2013) (stating that "there is no requirement to allege pre-suit knowledge of the patent to state a claim for contributory infringement").

Additionally, T-Mobile overlooks allegations that describe its knowledge of infringement by third parties (*e.g.*, its knowledge that customers' use of T-Mobile's wireless networks infringes the Asserted Patents).  For example, Huawei's Complaint explains that T-Mobile, with knowledge of the patents and its own infringement, likewise has specific intent to aid direct infringement by customers through the use of the infringing wireless network systems and methods.[5]  For example:

> On information and belief, T-Mobile takes active steps to induce infringement of one or more of at least claims 1, 4-5, 9-10 and/or 11 of the '779 patent by others, including its customers, network users, and authorized resellers, and ***T-Mobile takes such active steps knowing that those steps will induce, encourage and facilitate direct infringement by others.***

(Huawei's Complaint at ¶ 47 (emphasis added); *see also id.* at ¶¶ 59, 71 (similar allegations for other Asserted Patents).)  As another example, Huawei's Complaint details third party benefits of T-Mobile's unlicensed activities, which includes allowing third party network providers access to its accused back-end networks.  *See id.* at ¶ 19.  This access provides T-Mobile with increased revenue through "rental income from leasing space on wireless communication towers to third

---

[5] For reference, Huawei's Complaint mentions "customers" more than 25 times when discussing T-Mobile's unlicensed activities, including inducement.

parties." *Id.* (quoting T-Mobile's Annual Report).  Huawei has thus sufficiently alleged T-Mobile's knowledge of the patents and infringement.

Second, T-Mobile's claim that Huawei must "explain how a user or anyone else could use a service plan, SIM card, or mobile device to infringe any asserted claim" is incorrect.  This type of detail is not required to plead induced infringement, particularly when the infringement claims are directed at T-Mobile's network as used by its individual and corporate customers.  *See, e.g.*, *Cascades Computer Innovation, LLC v. Motorola Mobility Holdings, Inc.*, No. 11 C 4574, 2012 WL 2086473, at *2 (N.D. Ill. May 22, 2012) ("Defendant argues that the complaint 'fails to explain how any customer directly infringes . . . [and] why Defendants should be held indirectly liable' for such infringement, but Rule 8(a) requires allegations that plausibly entitle a plaintiff to relief—not detailed explanations of 'how' and 'why' that is so."); *Charles E. Hill & Assocs. v. ABT Elecs., Inc.*, No. 2:09-cv-313, 2010 WL 3749514, at *2 (E.D. Tex. Aug. 31, 2010) (addressing allegations of indirect infringement and holding that "a complaint does not require 'detailed factual allegations'") (quoting *Twombly*, 550 U.S. at 555).  Moreover, as explained in Section III(A), Huawei need only put T-Mobile on notice of what it must defend, and Huawei's Complaint provides such notice.

Third, Huawei has pled facts sufficient to support an inference that T-Mobile intended to infringe the Asserted Patents and to induce its customers to do the same.  Huawei expressly states that T-Mobile "knows or should know that its activities induce others to directly infringe." (Huawei's Complaint at ¶¶ 48, 60, 72.)  The cases cited by T-Mobile to argue these statements are insufficient are inapposite.  In *DSU Medical Corp. v. JMS Co.*, the Federal Circuit affirmed a lower court's instruction that inducement required "proof that the defendant knowingly induced infringement with the intent to encourage the infringement." 471 F.3d 1293, 1305-06 (Fed. Cir.

2006).  That case dealt with proof sufficient to support a claim, a much higher bar than what is necessary to sufficiently plead one at this stage—before Huawei has an opportunity to discover more about T-Mobile's state of mind.

At the pleading stage, Huawei need only state facts sufficient to support its claims, and those facts must be taken as true when addressing T-Mobile's motion to dismiss under Rule 12. Huawei has pled such facts, stating that T-Mobile's advertising suggests the accused networks be used in a certain way to infringe, a practice upheld by the Federal Circuit as proper pleading of an induced infringement claim.  *See In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1341-46 (Fed. Cir. 2012); *see also Zond, Inc. v. SK Hynix Inc.*, No. 13-11591-GRS, 2014 WL 346008, at *5 (D. Mass. Jan. 31, 2014) ("[Plaintiff] alleges that Defendants actively entice their customers 'through advertising, marketing and sales activity to use [their] infringing products as part of their own infringing products . . . .' This is enough.").

T-Mobile's reliance on *Superior Industries, LLC v. Thor Global Enterprises Ltd.* also fails, as in that case, the plaintiff did "not allege ***any facts*** to support a reasonable inference that [defendant] specifically intended to induce infringement . . . or that it knew it had induced acts that constitute infringement." 700 F.3d 1287, 1296 (Fed. Cir. 2012) (emphasis added).  Here, as explained above, Huawei has pled such facts.  T-Mobile's motion should therefore be denied.

### 2.  T-Mobile is on Notice of Huawei's Contributory Infringement Allegations

T-Mobile's contributory infringement arguments (T-Mobile's Motion at 19-22) fail for many of the same reasons set forth previously for induced infringement.  With respect to the argument concerning knowledge of the asserted patents (*id.* at 20-21), for example, Huawei properly pled that T-Mobile knew of the patents and also of the underlying direct infringement.

Moreover, Huawei has sufficiently pled the remaining requirements of contributory infringement.  T-Mobile challenges Huawei's allegations as to T-Mobile's knowledge that the accused wireless communication systems (a) are especially made or adapted for use in a manner that infringes the asserted patents and (b) do not have substantial non-infringing uses.  (*Id.*) Huawei's Complaint identified the service plans, mobile devices, and SIM cards provided by T-Mobile that, when used in conjunction with T-Mobile's wireless networks, infringe the Asserted Patents, and that the plans, devices, and cards are especially made or adapted for use with T-Mobile's wireless networks in a manner that infringes the Asserted Patents:

> T-Mobile contributes to the infringement of [the Asserted Patents] by others, including its customers, network users, and authorized resellers.  Acts by T-Mobile that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by T-Mobile of Wi-Fi Calling and seamless handover enabled mobile service plans, devices and/or SIM cards.  Such Wi-Fi Calling and seamless handover enabled service plans, mobile devices and/or SIM cards are especially adapted for use with and/or access to T-Mobile's Infringing Wireless Networks and are not suitable for substantial noninfringing use.  On information and belief, T-Mobile knows such Wi-Fi Calling and seamless handover enabled mobile service plans, mobile devices and/or SIM cards to be especially adapted for use with its Infringing Wireless Networks, including but not limited to for use with the network's seamless handover capabilities and that such Wi-Fi Calling and seamless handover enabled mobile service plans, mobile devices and/or SIM cards are not suitable for substantial noninfringing use.

(Huawei's Complaint at ¶¶ 49, 61, 73.)  This detail easily surpasses what courts have upheld as sufficient.  *See, e.g.*, *Tune Hunter*, 2010 WL 1409245 at *4 (holding contributory infringement claims sufficiently pled where plaintiff alleged defendants made an embodying device and sold it to customers, stating, "Defendants argue that [plaintiff] failed properly to allege additional facts that are required to prove claims for inducing infringement, contributory infringement.  [T]hose additional facts are not required by *Iqbal*."); *EmeraChem, Holdings, LLC v. Volkswagen Grp. Of Am., Inc.*, No. 3:14-CV-132, 2014 WL 5795027, at *3 (E.D. Tenn. Nov. 6, 2014) ("Volkswagen's statement that it is 'in the dark about how they are alleged to have contributed to the infringement

of the patents strikes the Court as hyperbolic.  Volkswagen knows what its NOx Storage catalysts and exhaust diagnostic systems do and what EmeraChem's patents claim.  These claims provide sufficient notice of EmeraChem's contributory infringement claims against Volkswagen to survive a motion to dismiss."); *Versata Software, Inc. v. Callidus Software, Inc.*, 944 F. Supp. 2d 357, 363 (D. Del. 2013) (allowing contributory infringement claims to proceed where plaintiff alleged that defendant "directly infringes and has knowledge that its products lack substantial non-infringing uses").

Additionally, T-Mobile's argument with respect to the element of "no substantial non-infringing uses" mischaracterizes the accused functionality.  (T-Mobile's Motion at 21-22.)  T-Mobile claims that its customers' use of service plans, mobile devices, and SIM cards may have other uses besides the seamless handover capabilities accused in this case.  This is incorrect.  The accused seamless handover capabilities are necessary components for T-Mobile's wireless networks to operate as it advertises and to adhere to standards governing wireless networks.  (*See, e.g.*, Huawei's Complaint at ¶¶ 20-22.)  That these networks may be used to effect other wireless features (*e.g.*, transmission of voice, messaging, data) in addition to the accused features does not mean that they have substantial non-infringing uses—rather, the seamless handover capabilities are necessary to ensure these "other features" perform as T-Mobile advertise and their customers expect:

> The service plans, mobile phones and/or SIM cards are offered for sale and sold to customers in the United States by T-Mobile (or an authorized reseller), including through its website and various storefronts, and when used as instructed by T-Mobile, access and use T-Mobile's Infringing Wireless Networks, ***including, for example, the seamless handover capabilities of those networks***.

(Huawei's Complaint at ¶ 22 (emphasis added).)  These components are "specially configured to access and make use of T-Mobile's Infringing Wireless Networks by T-Mobile or under its

authorization." (*Id.* at ¶ 23.)  In this manner they cannot be used by the customer, for example, to connect to third party non-infringing wireless networks.  Further, as T-Mobile admits, the accused technologies are "invisible" to the customer.  (T-Mobile's Motion at 17.)  Thus, after providing these components, which only connect to T-Mobile's Infringing Wireless Networks, the customers have no choice but to use the accused systems, components, or methods to infringe.  When the allegations in the Complaint are taken as true, as we must at this stage, there are no substantial non-infringing uses.

What T-Mobile identifies is not the type of "substantial non-infringing uses" that would avoid claims of contributory infringement.  Huawei's allegations must be presumed to be true at this stage.  Therefore, T-Mobile's motion should be denied.

### C.  T-Mobile Should Not Benefit from Its Willful Blindness

Huawei's Complaint provided dozens of pages of allegations based on T-Mobile's publicly available information, and its Complaint details T-Mobile's willful blindness by refusing to engage in good faith negotiations with Huawei about T-Mobile's infringement.  Huawei may show T-Mobile's knowledge of direct infringement under the doctrine of willful blindness.  *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011).  Willful blindness requires that "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* at 2070.  Huawei's Complaint explains that it contacted T-Mobile 18 months prior to filing this lawsuit, seeking to enter negotiations to license Huawei's patent portfolio.  (*See* Huawei's Complaint at ¶ 28.)  Huawei informed T-Mobile that its services infringed Huawei's intellectual property rights and sought to enter a non-disclosure agreement to permit the parties to discuss Huawei's Licensing Program and its detailed analyses of T-Mobile's infringement.  (*See id.*)  T-Mobile, however, refused to sign

any agreement or engage in any negotiations.  (*See id.* ¶¶ 29-31.)  T-Mobile was thus aware of a high probability that it infringed Huawei's patents, and it deliberately refused to sign a non-disclosure agreement to avoid learning more about its infringement.  (*See id.*)  These facts suffice to put T-Mobile on notice of Huawei's willful infringement claims, and the Court should therefore deny T-Mobile's motion.

### D.  In the Alternative, Huawei Should Be Granted Leave to Amend Its Complaint

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so requires." FED. R. CIV. P. 15(a). Rule 15(a) "evinces a bias in favor of granting leave to amend." *Herrmann Holdings Ltd. v. Lucent Tech., Inc.*, 302 F.3d 552, 566 (5th Cir. 2002). A district court "must have a 'substantial reason' to deny a request for leave to amend." *Id.*  In deciding whether to grant leave to amend, "the district court may consider factors such as whether there has been 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *Id*.

In the unlikely event the Court finds any portion of Huawei's Complaint to be deficient, each of these factors weigh in favor of granting Huawei an opportunity to amend its Complaint. This case has just begun and there has been no delay or bad faith, nor has Huawei made any amendments to its Complaint.  T-Mobile has suffered no undue prejudice, as this case is in its infancy and Huawei would nonetheless be entitled to amend its Complaint in response to T-Mobile's motion, rather than file its opposition to the motion.  Further, amendment will provide T-Mobile with the details that it asks for and will not be futile, even though the Local Patent Rules and the pleading standards do not require more details at this stage.  Therefore, to the extent the

Court is inclined to grant T-Mobile's Motions to Dismiss, Huawei should be granted leave to file

an amended pleading to cure any perceived deficiencies.

## IV.     CONCLUSION

Based on the foregoing, T-Mobile's Motion to Dismiss should be denied.  In the alternative,

Huawei should be granted leave to file an amended Complaint.

Dated:  April 7, 2016                                    Respectfully submitted,

                                                         By:  /s/ Jane Du
                                                              Ruffin B. Cordell
                                                              Texas Bar No. 04820550
                                                              cordell@fr.com
                                                              Linda L. Kordziel
                                                              DC Bar No. 446386
                                                              kordziel@fr.com
                                                              Richard A. Sterba
                                                              DC Bar No. 461417
                                                              sterba@fr.com
                                                              **FISH & RICHARDSON P.C.**
                                                              1425 K Street, N.W., 11th Floor
                                                              Washington, D.C. 20005
                                                              Telephone: (202) 783-5070
                                                              Facsimile: (202) 783-2331

                                                              Thomas H. Reger II
                                                              Texas Bar No. 24032992
                                                              reger@fr.com
                                                              Carl E. Bruce
                                                              Texas Bar No. 24036278
                                                              bruce@fr.com
                                                              David B. Conrad
                                                              Texas Bar No. 24049042
                                                              conrad@fr.com
                                                              Jane Du
                                                              Texas Bar No. 24076355
                                                              du@fr.com
                                                              **FISH & RICHARDSON P.C.**
                                                              1717 Main Street, Suite 5000
                                                              Dallas, TX 75201
                                                              Telephone: (214) 747-5070
                                                              Facsimile: (214) 747-2091

HUAWEI'S OPPOSITION TO T-MOBILE'S MOTION TO DISMISS                    18

David Barkan
California Bar No. 160825
barkan@fr.com
**FISH & RICHARDSON P.C**.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Kevin Su
Massachusetts Bar No. 663726
su@fr.com
**FISH & RICHARDSON P.C.**
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

**COUNSEL FOR PLAINTIFF HUAWEI
TECHNOLOGIES CO. LTD.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on April 7, 2016 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Jane Du*
Jane Du